UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING in part and DENYING in part Defendants' motions for summary judgment

Before the Court are a joint motion for summary judgment filed by Defendants the City of Upland ("Upland" or the "City") and Martin Thouvenell ("City Manager Thouvenell"), *see* Dkt. # 57 ("*City Mot.*"), as well as a separate motion for summary judgment filed by Defendant Brian Johnson ("Chief Johnson"), *see* Dkt. # 60 ("*Johnson Mot.*"). Plaintiff Marcus Simpson ("Plaintiff") has opposed these motions, *see* Dkts. # 68, 77 ("*City Opp.*"), ("*Johnson Opp.*"), and both sets of defendants filed replies, *see* Dkts. # 80, 83 ("*City Reply*"), ("*Johnson Reply*"). The Court held a hearing on this matter on November 25, 2019. Having considered the moving papers and oral arguments, the Court **GRANTS** in part and **DENIES** in part Defendants' motions for summary judgment.

I.   Background

   A.   Factual History[1]

Plaintiff was formerly a sergeant for the Upland Police Department (the "Police Department"). *Plaintiff's Additional Material Facts in Opposition to the City's Motion*, Dkt # 68-1 ("*PSUF City*"), ¶ 1. At the times relevant to this suit, Chief Johnson was the chief of the Police Department and City Manager Thouvenell was the Upland City Manager. *Id.* ¶¶ 2 3. In

---

[1] As a preliminary matter, Chief Johnson asserts evidentiary objections along with his reply. *See* Dkt. # 83-2. To the extent that the Court relies on objected-to evidence, it relies only on admissible evidence and, therefore, the objections are overruled. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

December 2014, Plaintiff was elected vice president of the Upland Police Management Association ("UPMA"), a union that serves as the exclusive representative for Upland Police Management employees. *Id.* ¶ 2. In April 2015, Plaintiff took over the responsibilities of the UPMA president ⎯ who was on leave ⎯ and in May 2016, Plaintiff was elected to be the UPMA president himself. *Id.*

In 2016, numerous issues emerged between Chief Johnson and the UPMA. In his capacity as union president, Plaintiff raised a litany of concerns about Chief Johnson and the operation of the Police Department with Johnson himself, as well as City Manager Thouvenell. *Id.* ¶ 5. These concerns included: a failure to meet and confer about changed working conditions, low morale as a result of Chief Johnson's policies and attempts to implement failed LAPD standards and practices, a hostile work environment where Chief Johnson called certain supervisors "saboteurs," lack of staffing and the safety issues caused by it, lowering/changing hiring standards, high employee turnover because of Chief Johnson's policies, Chief Johnson's lack of communication with supervisors, and various complaints that Chief Johnson had violated the law. *Id.* ¶¶ 5⎯10.

Throughout 2016, tensions arose between Chief Johnson and Plaintiff. Plaintiff claims that Chief Johnson made many antagonistic statements toward him and the union. *See id.* ¶¶ 5⎯12. According to Plaintiff, Chief Johnson told him and union representatives: "bring it on, I'm ready for a fucking war with you guys." *Id.* ¶ 60. On numerous other occasions, Chief Johnson allegedly told Plaintiff that he had seen officers' careers ruined by their union activity, and that when he was a union member while working at the Los Angeles Police Department, his goal was to "work with the administration and not cause problems." *Id.* ¶ 12. During a contentious contract negotiation between the UMPA and the City in May 2016, Chief Johnson allegedly called Plaintiff into his office and told him that he believed that Plaintiff was causing strife between Chief Johnson, the City, and the UPMA, and that "down the road this would be remembered." *Id.* ¶ 11. Chief Johnson denies making any of these statements. *The City's Reply to PSUF City*, Dkt # 80-3 ("*PSUF Reply City*"), ¶¶ 5⎯13, 60; *Johnson's Reply to PSUF Johnson*, Dkt # 83-1 ("*PSUF Reply Johnson*"), ¶¶ 5⎯15.

Chief Johnson and Plaintiff also had problems that arose outside of Plaintiff's union activities. In November 2016, Chief Johnson directed Plaintiff to put together a probation and parole compliance sweep. *The City's Statement of Undisputed Facts*, Dkt. # 57-3 ("*City SUF*"), ¶ 16. To conduct the sweep, Plaintiff needed to coordinate with surrounding municipalities. *Id.* According to Chief Johnson, he asked Plaintiff at a meeting whether the police department in Chino, California could participate, and Plaintiff stated that Chino could not. *See Johnson's*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

*Statement of Undisputed Facts*, Dkt. # 60-1 ("*Johnson SUF*"), ¶ 19  22. Plaintiff disputes this, stating that Chief Johnson did not ask about Chino at this meeting. *Plaintiff's Statement of Genuine Disputes in Opposition to Johnson's Motion*, Dkt # 77-1 ("*PSGD Johnson*"), ¶ 20. In any event, Chief Johnson later attended a meeting of County Chiefs where he learned that Chino was not contacted and could participate in the sweep. *Johnson SUF* ¶¶ 20  21. Chief Johnson told Plaintiff that Plaintiff made him "look like an idiot" at the meeting. *Id.* ¶ 27.

In September 2016, Plaintiff took an exam to be promoted to lieutenant and achieved the second-highest score of all test-takers. *PSUF City* ¶ 29. After the highest-scoring test-taker was promoted, Chief Johnson then promoted the other officer on the eligibility list, who had tested third on the exam. *Id.* ¶ 39. Chief Johnson stated that he promoted the other officer because the other officer had more seniority, as well as sounder administrative skills. *Id*. ¶¶ 39  40. Chief Johnson and Thouvenell ultimately "froze" a remaining lieutenant position with only Plaintiff remaining on the list. *City SUF* ¶ 8. At this time, the City faced a severe financial crisis and, as a result, reduced several department budgets. *Id.* ¶ 11. The City states that it froze the lieutenant position to help save the police department 15% in expenses.[2] *Id.* ¶¶ 11  14.

In January 2017, Chief Johnson said in a meeting that he "had dirt" on all of the UPMA board members, although Chief Johnson disputes this and points to testimony that he was simply frustrated. *Plaintiff's Statement of Additional Material Facts in Opposition to Johnson's Motion*, Dkt # 77-1 ("*PSUF Johnson*"), ¶ 34; *PSUF Reply Johnson* ¶ 34. Later that month, Chief Johnson conducted an unplanned solo raid of a medical marijuana dispensary, wherein he drew his weapon and ordered arrests of the operators. *PSUF Johnson* ¶ 35. In response to these incidents, Plaintiff reported Chief Johnson's conduct to City Manager Thouvenell. *Id.* Plaintiff also complained about Chief Johnson's conduct to three members of the Upland City Council and to Upland Mayor Debbie Stone. *Id.* ¶ 40. Chief Johnson allegedly stated that he was aware that Plaintiff and the union had spoken to the City Council about their grievances against him, although Johnson denies this. *Id.* ¶ 48; *PSUF Reply Johnson* ¶ 48. City Manager Thouvenell, who had heard other complaints about Chief Johnson, told Plaintiff that the City was opening an investigation into the Chief. *PSUF City* ¶ 46. He also told Plaintiff to gather complaints about Chief Johnson. *City SUF* ¶ 31.

---

[2] Plaintiff disputes this justification without an explanation or citation to any evidence. *Plaintiff's Statement of Genuine Disputes in Opposition to the City's Motion*, Dkt. # 68-1 ("*PSGD City*"), ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

On February 28, 2017, Plaintiff received a notice from a City human resources manager stating that he was a potential witness in the investigation into Chief Johnson, and that he was not to discuss the matter with anyone. *Id.* ¶ 25. Plaintiff maintains that this order was invalid because the manager was not within his chain of command. *PSGD City* ¶ 25. Around April 3, 2017, Plaintiff discussed the ongoing investigation with Luz Barrett, Chief Johnson's assistant, although the parties dispute the content of the conversation. *City SUF* ¶¶ 26 28; *PSGD City* ¶¶ 26 28. About a week later, Plaintiff and two other detectives separately, but within minutes of each other, asked Barrett whether she had her interview yet. *City SUF* ¶ 29. Barrett reported this interaction to Chief Johnson, who told her to summarize the interactions in a memo that he then sent to City Manager Thouvenell. *PSUF Johnson* ¶¶ 54 55. Shortly after, Chief Johnson put Plaintiff on administrative leave and the City opened an internal affairs investigation into Plaintiff's interactions with Barrett and the 2016 probation sweep incident. *PSUF City* ¶ 74.

The outside investigator found that Plaintiff was untruthful in response to Chief Johnson's questions about the probation sweep. *City SUF* ¶ 46. He also found that Plaintiff was untruthful and insubordinate in how he handled the investigation into Chief Johnson. *Id.* ¶¶ 47 51. Because both Chief Johnson and City Manager Thouvenell were witnesses in the investigation, the City delegated decision-making authority to Deputy City Manager Jeannette Vagnozzi. *PSUF City* ¶ 84. After reviewing the investigator's findings, Vagnozzi prepared a notice of proposed termination that she gave to Plaintiff. *City SUF* ¶ 61. Plaintiff then had a *Skelly* hearing with Vagnozzi where he was given the opportunity to refute the allegations.[3] *Id.* ¶ 62. Unpersuaded by Plaintiff's input, Vagnozzi prepared a final notice of termination, but received a resignation email from Plaintiff before she gave the notice to him. *PSUF City* ¶ 94. Plaintiff felt that he had no choice but to resign given that a termination for dishonesty "was in effect a career death sentence." *Id.* ¶ 95. He found employment with the Cal Poly Pomona Police Department shortly after his resignation. *Id.* ¶ 96.

B. Procedural History

Plaintiff initiated this action in California Superior Court, San Bernardino County on April 17, 2017, *see* Dkt. # 1-1, and Defendants removed it to this Court on May 11, 2018, *see* Dkt. # 1. After removal, Plaintiff filed a first amended complaint ("FAC"), bringing two-state law claims against the City only, and two federal claims against all Defendants under 42

---

[3] A *Skelly* hearing refers to the due process meeting required under *Skelly v. State Personnel Bd.,* 15 Cal. 3d 194 (1975), when a public employee faces a potential deprivation of his or her property interest as an employee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

U.S.C. § 1983, alleging that they had violated his due process rights and retaliated against him in violation of the First Amendment. *See First Amended Complaint*, Dkt. # 21.

The City and City Manager Thouvenell moved to dismiss the § 1983 claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4] *See* Dkt. # 22. The Court granted the motion on August 2, 2018. *See generally August 2 Order*, Dkt. # 26. The Court concluded that the FAC failed to state a claim against City Manager Thouvenell and failed to state constitutional claims against the City because it did not raise a plausible inference of § 1983 liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *August 2 Order* at 6. Accordingly, the Court dismissed the § 1983 claims against the City and City Manager Thouvenell but granted Plaintiff leave to amend. *Id.* at 8.

On August 30, 2018, Plaintiff filed his Second Amended Complaint ("SAC"), again asserting four causes of action:

> First Cause of Action: Violation of California Labor Code § 1102.5 (retaliation), against the City only. *See Second Amended Complaint*, Dkt. # 31 ("*SAC*"), ¶¶ 34–39.
>
> Second Cause of Action: Violation of 42 U.S.C. § 1983 (due process), against all Defendants. *Id.* ¶¶ 40–49.
>
> Third Cause of Action: Violation of 42 U.S.C. § 1983 (First Amendment retaliation), against all Defendants. *Id.* ¶¶ 50–55.
>
> Fourth Cause of Action: Retaliation, interference, and discrimination in violation of California Government Code §§ 3502, 3501.1, and 3506, against the City only. *Id.* ¶¶ 56–63.

The City and City Manager Thouvenell then moved to dismiss both the due process and First Amendment claims (the second and third causes of action), while Chief Johnson moved to dismiss only the due process claim (the second cause of action). *See October 25 Order*, Dkt. # 42. The Court granted City Manager Thouvenell's motion as to Plaintiff's theories that the City Manager violated his constitutional rights by acquiescing to Chief Johnson's conduct or by convincing union members to abstain from advocating against Plaintiff's termination. *See id.*

---

[4] Chief Johnson had not yet been served and therefore did not file his own motion to dismiss the First Amended Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

However, the Court otherwise denied the motion and held that Plaintiff could proceed on a theory that the City Manager made false statements during the internal affairs investigation with the intent to harm Plaintiff. *See id*.

The City and City Manager Thouvenell now move for summary judgment on all claims. *See generally City Mot.* Chief Johnson also moves for summary judgment on the two claims against him. *See generally Johnson Mot.*

II.     Legal Standard

"A party may move for summary judgment, identifying each claim or defense    or the part of each claim or defense    on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630  31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.    Discussion

The Court addresses the claims against each Defendant separately.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

    A.    <u>Chief Johnson</u>

Plaintiff brings two claims against Chief Johnson: violation of due process and First Amendment retaliation, both pursuant to § 1983. *See SAC* ¶¶ 40–55. The Court addresses each claim in turn.

        *i.*    *Violation of Due Process*

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1. To make out a due process claim, a plaintiff must show that he was deprived of a protected property or liberty interest without due process by a person acting under color of state law. *See Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011); *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009). Finally, the Ninth Circuit requires "integral participation" from each government officer as a predicate to liability. *See Boyd v. Benton Cty.*, 373 F.3d 773, 780 (9th Cir. 2004); *Chudacoff*, 649 F.3d at 1151.

Chief Johnson does not dispute that Plaintiff had a property interest in his employment. Instead, Chief Johnson argues that he is entitled to qualified immunity because he was not involved in Plaintiff's alleged constructive discharge.[5] *See Johnson Mot.* 13:19–14:9. Plaintiff responds that Chief Johnson can be held liable for this claim because he initiated the events that led to Plaintiff's discharge. *See Johnson Opp.* 14:25–15:3.

The Court concludes that there is a triable issue on Plaintiff's due process claim because a jury could conclude that Chief Johnson was an integral participant. Chief Johnson wrote the memorandum that initiated an investigation into Plaintiff and served as a witness. *PSUF Johnson* ¶¶ 54–55. Afterward, the investigator recommended that the City terminate Plaintiff based in part on Chief Johnson's testimony that Plaintiff lied to him about the 2016 probation sweep; Plaintiff disagrees with this account. *City SUF* ¶ 46; *PSGD Johnson* ¶ 20. Further, although the precise facts are disputed, both parties document tensions between them during their shared tenure at the Police Department, which indicates that Chief Johnson may have had a reason to retaliate. *PSUF City* ¶¶ 5–12, 60; *PSGD Reply City* ¶¶ 5–12, 60. While Chief Johnson did not make the final decision about Plaintiff's employment, his role in Plaintiff's investigation and alleged hostility toward him raise a triable issue as to whether he deprived Plaintiff of due

---

[5] Below, the Court concludes that there is a triable issue of fact as to whether Plaintiff was constructively discharged. *See Part* III.C.ii, *infra*.

Case 5:18-cv-01024-PSG-SP   Document 102   Filed 11/25/19   Page 8 of 19   Page ID #:3954

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

process. *Cf. Chudacoff*, 649 F.3d at 1151 (holding that a member of a board that deprived a physician of medical staff privileges was not an "integral participant" in his due process violation because she was a non-voting member and played no other role integral to his firing).

On reply, Chief Johnson argues that he is not an integral participant, but the cases that he cites are distinguishable. *See Johnson Reply* 2:4 7:8. First, they are from the inapposite excessive force context, rather than the employment context in this case. *See id*. Moreover, the cases that he relies on most, *Torres* and *Bravo*, dismissed parties who had little to no relationship with the plaintiffs in those cases, unlike Chief Johnson, who was Plaintiff's supervisor for several years. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (holding that an officer was not an integral participant when the officer was not present for the arrest and the plaintiff presented no evidence that the officer instructed the other detectives to arrest the plaintiff); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) (holding that officers were not integral participants when they merely scouted a location prior to the improper execution of a warrant). Unlike the officers in *Torres* and *Bravo*, Chief Johnson knew Plaintiff well, allegedly expressed animus toward him, and then later was a witness in his investigation, which creates a triable issue on whether he was an integral participant. *See Torres*, 548 F.3d at 1206; *Bravo*, 665 F.3d at 1090; *PSUF City* ¶¶ 5 12, 60.

Accordingly, the Court concludes that Chief Johnson has not met his burden to show that he is entitled to judgment as a matter of law on the § 1983 claim for violation of due process. Therefore, summary judgment on this claim is **DENIED**.

      *ii.    First Amendment Retaliation*

Next, Plaintiff argues that Chief Johnson retaliated against him for exercising his First Amendment rights. The Ninth Circuit follows "a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (internal quotation marks and citation omitted). "Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

employment action even absent the protected speech." *Id.*; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013).

Chief Johnson argues first that he is entitled to judgment as a matter of law because there is no causal connection between his actions and any purported protected speech. *See Johnson Mot.* 17:18 19:15. He also argues that Plaintiff did not speak on matters of public concern. *See id.* 19:16 20:5. Plaintiff responds that a reasonable jury could conclude that his protected speech caused both Chief Johnson's direct actions, such as the failure to promote, as well as the constructive discharge. *See Johnson Opp.* 17:23 21:8. Further, he contends that he spoke as a private citizen on a matter of public concern: Chief Johnson's unlawful conduct. *See Johnson Opp.* 21:9 22:9. The Court addresses each issue separately.[6]

### a. Public Concern

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983)). Speech that deals with "individual personnel disputes and grievances" that "would be of no relevance to the public's evaluation of the performance of governmental agencies" generally is not of public concern. *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983). The Ninth Circuit has repeatedly held that speech about illegal or otherwise improper government conduct "is quintessentially a matter of public concern." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 68 (9th Cir. 2013) (en banc) (collecting cases). The public concern inquiry is a legal question that does not go to a jury. *Berry v. Dept. of Soc. Servs.*, 447 F.3d 642, 648 (9th Cir. 2006) (citing *Hyland v. Wonder*, 972 F.2d 1129, 1134 (9th Cir. 1992)).

---

[6] In his reply, Chief Johnson briefly argues that Plaintiff did not speak as a private citizen, but as a public employee. *See Johnson Reply* 9:1 9. Although the Court is not obligated to consider arguments raised for the first time on reply, *See Telesign Corp. v. Twilio, Inc.*, No. CV 15-3240 PSG (SSx), 2015 WL 12662344, at *1 (C.D. Cal. Oct. 9, 2015), it will note that it finds at least a triable issue as to whether Plaintiff spoke as a private citizen because Plaintiff, in his capacity as union president, spoke to public officials about Chief Johnson's conduct. *See Ellins*, 710 F.3d at 1060 ("Given the inherent institutional conflict of interest between an employer and its employees' union, we conclude that a police officer does not act in furtherance of his public duties when speaking as a representative of the police union."); *PSUF Johnson* ¶¶ 40, 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

Chief Johnson claims that Plaintiff's speech concerned unprotected personnel disputes, but this is incorrect. *See Johnson Mot.* 19:16 20:5. Plaintiff spoke to public officials about what he perceived as Chief Johnson's unlawful conduct during the medical marijuana dispensary raid, along with other claims of wrongful conduct concerning how he managed the Police Department. *PSUF Johnson* ¶¶ 40, 48. Some of Plaintiff's earliest statements to public officials also concerned union activity, namely Chief Johnson's failure to follow the Miles-Milas-Brown Act ("MMBA"). *PSUF City* ¶¶ 5 7. These statements are "quintessentially a matter of public concern." *See Dahlia*, 735 F.3d at 1067; *Thomas v. City of Beaverton,* 379 F.3d 802, 809 (9th Cir. 2004) ("Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern").

As such, the Court holds that Plaintiff spoke on a matter of public concern.

      *b.*    *Causation*

Chief Johnson argues that even if Plaintiff spoke on a matter of public concern, his speech did not motivate an adverse employment action. "To establish that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff may introduce evidence that (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the proffered explanations for the adverse action were false and pretextual." *Ellins*, 710 F.3d at 1062. The Ninth Circuit holds that evidence as to one of these three factors "may be sufficient to allow a plaintiff to prevail in a public employee retaliatory speech claim." *See id.* at 1063.

Plaintiff argues that Chief Johnson meets each possible factor for three adverse employment actions: failure to promote, freezing the open lieutenant position, and placing Plaintiff on administrative leave before his constructive discharge. *See Johnson Opp.* 17:23 21:8. Chief Johnson asserts that Plaintiff cannot create a triable issue that any of Plaintiff's protected speech motivated him to take any of these actions. *See Johnson Mot.* 17:18 19:15.

The Court finds that there is a triable issue on each adverse employment action. To start, Plaintiff has marshalled evidence that he engaged in protected speech leading up to Chief Johnson denying him a promotion in January 2017, freezing the position that March, and ultimately placing him on administrative leave. *See PSUF City* ¶¶ 5 12; *PSUF Johnson* ¶¶ 5 7, 40. While Chief Johnson disputes exactly how he reacted to Plaintiff's complaints, there is at

Case 5:18-cv-01024-PSG-SP   Document 102   Filed 11/25/19   Page 11 of 19   Page ID #:3957

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

least a triable issue that he outwardly opposed them. *See PSGD Reply Johnson* ¶¶ 5 7, 40, 48; *see Ellins*, 710 F.3d at 1063 (holding evidence that a police chief was dismayed and disappointed in an officer's protected speech created a triable issue on causation in a First Amendment retaliation case). Further, Plaintiff's complaints were proximate in time given that they occurred in late 2016 and into 2017 (after the medical marijuana dispensary raid), which coincides with when Chief Johnson first considered him for a promotion and then placed him on administrative leave. *See PSUF City* ¶¶ 5 12, 39, 74; *PSUF Johnson* ¶ 35; *see Ellins*, 710 F.3d at 1063 (finding that proximity between the protected speech and adverse employment action alone can allow a First Amendment retaliation claim to survive summary judgment).

Ultimately, the Court concludes that Plaintiff spoke on a matter of public concern and that there is a triable issue on whether his speech motivated the adverse employment actions. As such, the Court **DENIES** summary judgment on this claim.

        *iii.*    *Punitive Damages*

Lastly, the Court turns to Chief Johnson's arguments that he is entitled to summary judgment on punitive damages because Plaintiff has not created a triable issue on whether he committed any malice, oppression, or fraud. *See Johnson Mot.* 20 23. Punitive damages may be assessed in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, drawing all inferences in Plaintiff's favor, the evidence creates a genuine dispute of fact as to whether Chief Johnson lied about Plaintiff in an internal affairs investigation that led to the loss of his job. *PSUF City* ¶¶ 5 12, 60; *PSUF Johnson* ¶¶ 54 55. The evidence also creates a genuine dispute of fact as to whether Chief Johnson retaliated against him for union activities and protected speech. *PSUF City* ¶¶ 5 12, 60; *PSGD Johnson* ¶ 55. This evidence could allow a jury to find by clear and convincing evidence that Chief Johnson acted with "reckless or callous indifference" toward Plaintiff's federally protected rights. *See Smith*, 461 U.S. at 56. As such, the Court **DENIES** summary judgment on Plaintiff's claim for punitive damages.

      B.    <u>City Manager Thouvenell</u>

City Manager Thouvenell moves for summary judgment on both claims against him under § 1983, one for violation of due process and one for First Amendment retaliation. *See SAC* ¶¶ 40 55; *See generally City Mot.* The Court takes each claim in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

      *i.*      *Violation of Due Process*

      Plaintiff's claim for violation of due process against City Manager Thouvenell fails because he provided Plaintiff with all requisite process before he resigned. During pre-termination proceedings, federal due process requires that employees with for-cause protections receive "oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). In California, pre-termination safeguards "include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Skelly*, 15 Cal. 3d at 215.

      Plaintiff incorrectly argues that he was denied both pre- and post-termination protections before his resignation. *See City Opp.* 19:16  20:9. Plaintiff does not dispute that he had a *Skelly* hearing before Deputy City Manager Vagnozzi where they reviewed the findings of the internal investigation. *PSGD* ¶ 62. These actions meet minimum due process requirements. *See Skelly*, 15 Cal. 3d at 215; *Lopez v. City & Cty. of San Francisco*, No. 12-CV-06523-MEJ, 2014 WL 2943417, at *9 (N.D. Cal. June 30, 2014). While Plaintiff was entitled to more protections post-termination, such as a hearing before a neutral arbitrator, he never received those protections because he resigned. *City SUF* ¶ 71.

      Lastly, unlike his claims against Chief Johnson, Plaintiff does not provide sufficient evidence that City Manager Thouvenell was an "integral participant" in his constructive discharge. In a declaration, Plaintiff states that Thouvenell lied in the investigation about whether he told Plaintiff to collect complaints about Chief Johnson. *Declaration of Marcus Simpson*, Dkt. # 68-3 ("*Simpson Decl.*"), ¶ 38. This statement, he argues, conflicts with the order he received from human resources not to discuss the investigation. *City SUF* ¶ 25. However, even assuming that Thouvenell lied in the investigation, it is inconsequential because Plaintiff admits that he disregarded the human resources order, which formed the basis for the report's finding of insubordination. *PSUF* ¶ 62. Without more, Plaintiff cannot show that City Manager Thouvenell integrally participated in his constructive discharge.

      Accordingly, the Court **GRANTS** summary judgment on the due process claim against City Manager Thouvenell.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

*ii.     First Amendment Retaliation*

City Manager Thouvenell argues that he is entitled to summary judgment on the First Amendment retaliation claim because he was not involved with any of the adverse employment decisions against Plaintiff. *See City Mot.* 24. He states that, in fact, he could not have had a retaliatory motive because he shared Plaintiff's concerns about Chief Johnson. *See id.* Plaintiff counters that City Manger Thouvenell did take adverse action against Plaintiff when he froze the lieutenant position and made false statements to Plaintiff's investigator. *See City Opp.* 24 25.

Accepting Plaintiff's assertion that City Manager Thouvenell took adverse actions against him as true, the Court cannot conclude that there is a triable issue here because Plaintiff does not provide any evidence of retaliatory motive. Unlike Chief Johnson's objections and animus, here Plaintiff fails to provide evidence that the City Manager objected to his complaints about Chief Johnson, and instead provides evidence that the City Manager concurred. *PSUF City* ¶ 46; *Ellins*, 710 F.3d at 1062 ("'[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances.'") (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)). Ultimately, because Plaintiff does not provide evidence that City Manager Thouvenell knew about, let alone shared, Chief Johnson's retaliatory motive, the Court **GRANTS** summary judgment on this claim.

C.     The City

Plaintiff brings both constitutional claims against the City under *Monell*, as well as state law claims for employment retaliation.

*i.     Constitutional Claims under Monell*

Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a "final policymaker." *Delia v. City of Rialto*, 621 F.3d 1069, 1081 82 (9th Cir. 2010).

Plaintiff argues that the City is liable as a "final policymaker." *See City Opp.* 22:16 24:8. He asserts that the City Manager, on behalf of the City, ratified Deputy Vagnozzi's pretextual decision to constructively discharge him. *See id.* However, as explained above, Plaintiff has failed to create a triable issue that either Thouvenell or Vagnozzi deprived him of due process or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

had the retaliatory motive necessary to terminate him in violation of the Constitution. On the due process claim, Plaintiff acknowledges that he received requisite pre-termination process under *Skelly*. *PSGD City* ¶ 62. As for the First Amendment claim, Plaintiff provides no evidence that either City Manager Thouvenell or Vagnozzi objected to his speech about Chief Johnson or made decisions about his employment based on anything other than what they saw in the report. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (holding that a plaintiff must produce evidence that the final policymaker approved both a subordinate's decision *and* the improper basis for that decision to survive summary judgment on a ratification theory) (emphasis added).

Accordingly, because Plaintiff has not provided evidence that the decision of a final policymaker violated his constitutional rights, the Court **GRANTS** summary judgment on these claims against the City.

   ii.  *State Law Claims*

Plaintiff brings two state law claims against the City. *SAC* ¶¶ 34 39, 56 63. The first is a claim for employer retaliation under California Labor Code § 1102.5. *See id.* ¶¶ 34 39. The second is a claim for retaliation under the MMBA. *See id.* ¶¶ 56 63. The Court addresses each claim separately.

    a.  *Retaliation Under Cal. Lab. Code § 1102.5*

When a plaintiff alleges retaliatory employment termination under Cal. Lab. Code § 1102.5, and the defendant seeks summary judgment, "California follows the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether there are triable issues of fact for resolution by a jury." *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109 (2007); *Kasbarian v. Equinox Holdings, Inc.*, 739 F. App'x 397, 400 (9th Cir. 2018). Under the three-part test developed in *McDonnell*: "(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000).

To establish the first prong, a prima facie retaliation case, "a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." *Id.* at 69. If the employee establishes a prima facie case, the employer is required to offer a legitimate, nondiscriminatory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

reason for the adverse employment action. *Id.* Finally, if the employer provides a legitimate reason for the adverse employment action, "the burden shifts back to the employee to provide substantial responsive evidence that the employer's proffered reasons were untrue or pretextual." *Loggins*, 151 Cal. App. 4th at 1109.

Plaintiff argues that there is a triable issue on two adverse employment actions: failure to promote and constructive discharge. *See City Opp.* 14  15. The Court takes each action in turn.

### 1.   Failure to Promote

Plaintiff argues that he was denied a promotion based on his statements about Chief Johnson. *See id.* 18  19. The City first argues that this is not an adverse employment action because Plaintiff cannot prove that he had "clearly superior qualifications." *See City Mot.* 18:16  19. Next, the City contends that Chief Johnson's hiring discretion and the departmental budget cuts gave it a legitimate reason to deny Plaintiff the promotion.[7] *See id.* 18:20  19:3. Plaintiff responds that, combined with his other evidence about Chief Johnson's animus, a reasonable jury could find these non-retaliatory reasons pretextual given Chief Johnson's stated personnel preferences and the timing of unfreezing the lieutenant position. *See City Opp.* 18  19.

The Court concludes that denial of a promotion is an adverse employment action. An "adverse employment action" is an action that "materially affects the terms and conditions of employment." *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1387  88 (internal quotation omitted). It "encompasses not only ultimate employment decisions, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Id.* Here, a failure to promote Plaintiff to lieutenant is an adverse employment action because it impacted his ability to advance in his career. *See id.*; *see also Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance

---

[7] The City does not argue that Plaintiff did not engage in protected activity or that there was no causal link between the protected activity and either adverse employment action. Arguments to which no response is supplied are deemed conceded for purposes of this motion. *See, e.g.*, *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). As such, the Court assumes that these elements of the prima facie case are met and does not analyze them further.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

of an undeserved negative performance review and refusal to consider for promotion."). The City argues that Plaintiff lacks the "clearly superior" qualifications needed to bring this claim, but the Ninth Circuit case it cites for this proposition says only that clearly superior qualifications are sufficient, but not necessary, evidence that an employer's stated reasons for failure to promote are pretextual. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) ("In this Circuit, we have held that a finding that a Title VII plaintiff's qualifications were clearly superior to the qualifications of the applicant selected is a proper basis for a finding of discrimination.") (internal quotation marks omitted).

The Court further finds that a reasonable jury could conclude that the City's proffered reasons for denying Plaintiff the promotion were pretextual. To determine whether an employer's non-retaliatory reasons are untrue or pretextual, "if the evidence originally presented as part of the plaintiff's prima facie case 'raises a genuine issue of material fact regarding the truth of the employer's proffered reasons,' the plaintiff need not present any additional evidence that the acts in question were retaliatory." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000)). Plaintiff meets this burden because the disputed evidence of Chief Johnson's animus toward him raises a genuine issue of material fact as to whether Chief Johnson withheld the promotion to retaliate against Plaintiff for his union activities. *PSUF City* ¶¶ 11, 60. Although the City has provided non-retaliatory reasons for denying Plaintiff the promotion, namely its budgetary crisis, Plaintiff has provided "substantial evidence," such as the timing of when the position was frozen and unfrozen, that, in combination with Chief Johnson's statements, could lead a reasonable jury to find pretext. *See id.*; *City SUF* ¶ 8.

As such, the City has not met its burden to show that there is no genuine issue of material fact on Plaintiff's retaliation claim based on a failure to promote theory. The Court thus **DENIES** summary judgment on this basis.

### 2. *Constructive Discharge*

Next, Plaintiff argues that he was inappropriately constructively discharged. *See City Opp.* 14 16. An employee can demonstrate constructive discharge "based on a theory of coercion . . . if, from the totality of the circumstances, it appears that the employer's conduct in requesting or obtaining the resignation effectively deprived the employee of free choice in the matter." *Knappenberger*, 566 F.3d at 940 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

The City argues that Plaintiff was not constructively discharged because he resigned voluntarily. *See City Mot.* 17:3‒8. And, even if he did not, the City had non-retaliatory reasons for discharging him based on Plaintiff's dishonesty regarding the 2016 probation sweep and his disregarding an order not to talk about the investigation into Chief Johnson. *See id.* 17:12‒17. Plaintiff argues that he was constructively discharged under a coercion theory. *See City Opp.* 14:13‒15. Because he faced a notice of termination, a "career death sentence," his resignation was not voluntary. *See id.* 15:7‒19. Moreover, according to Plaintiff, the City's reasons for firing him are untrue because they are based on Chief Johnson's false memorandum and witness testimony. *See id.* 16:12‒28.

First, the Court concludes that a reasonable jury could find that the City constructively discharged Plaintiff. Plaintiff argues that he had no choice but to resign given the devastating career implications. *See id.* 15:7‒19. He bases this assertion on his experience in law enforcement and a conversation he had with his now-employer about his hiring prospects with a termination for dishonesty on his record. *See PSUF City* ¶¶ 95‒96. While the City responds that Plaintiff chose to resign and avoid the consequences of a for-cause termination, the question of whether Plaintiff lacked a voluntary choice "is normally a factual question for the jury." *See Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007); *City Mot.* 17:3‒8. In this case, Plaintiff has provided enough evidence to raise a genuine dispute of material fact as to whether he was constructively terminated. *See Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996) (holding that an employee was constructively discharged because he felt "he had no choice but to retire" when his employer effectively reduced his income stream to zero).

In addition, Plaintiff has provided necessary evidence to dispute whether his looming termination had a legitimate basis. The City based its actions against Plaintiff in part on Plaintiff's alleged lie about the 2016 probation sweep. *Johnson SUF* ¶ 20; *PSGD Johnson* ¶ 20. However, Plaintiff denies that he lied and puts forth a conflicting account based on testimony from himself and other witnesses. *PSGD Johnson* ¶ 20. Further, Chief Johnson, whom Plaintiff alleges displayed animus toward him and the union, wrote the memorandum that started the investigation and was a witness in it. *PSUF Johnson* ¶¶ 54‒56; *PSUF City* ¶ 84. In short, Plaintiff puts forth "specific and substantial evidence" that there is a dispute over his alleged dishonesty, one of the stated reasons for the City's actions against him. *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095‒96 (9th Cir. 2005).

The City argues that its reasons for constructively terminating Plaintiff were perfectly legitimate, but these arguments are insufficient to grant summary judgment. Specifically, the City contends that its actions were justified because Plaintiff was insubordinate when he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

disregarded the order from human resources not to speak about the Chief Johnson investigation. *See City Mot.* 2. However, Plaintiff genuinely disputes this contention. First, based on testimony from another lieutenant in the department, Plaintiff denies violating the order as written. *See Declaration of Brandi L. Harper*, Dkt. # 68-4 ("*Harper Decl.*"), Ex. A (Deposition of Alan Ansara) 62:1 17 ("*Ansara Depo*") ("Ansara testified the idea behind the order is 'don't go to these people and start talking about, hey, what are you going to testify, what are you going to say, did you see this, did you say that, are you aware of this. It's not to say, hey, I let them know you're a witness.'"). Second, as noted above, the City based its decisions in part on testimony from Chief Johnson, whom Plaintiff contends repeatedly displayed hostility toward him. *City SUF* ¶ 36.[8]

Accordingly, the City has also not met its burden to show that there is no genuine issue of material fact as to whether Plaintiff was constructively terminated or his retaliation claim. The Court thus **DENIES** summary judgment on this basis as well.

        b.     *Retaliation Under Cal. Gov. Code §§ 3502, 3501.1, and 3506*

The City briefly argues that the Court should grant summary judgment on Plaintiff's fourth cause of action for retaliation under the MMBA because its reasons for its actions against him were legitimate. *See City Mot.* 22:25 27. However, as explained above, there is a genuine dispute as to the legitimacy and truth of the City's proffered reasons. Therefore, the Court **DENIES** summary judgment on the fourth cause of action.

    D.    <u>Summary</u>

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part. The Court **DISMISSES** the following claims:

---

[8] On reply, the City also argues that Plaintiff cannot bring a claim for constructive discharge under California law. *See City Reply* 9:3 14 (citing *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal. 4th 876 (2008)). "[A] court does not need to consider facts or arguments raised for the first time in a reply brief." *See Telesign Corp.*, 2015 WL 12662344, at *1. However, on the merits, *Miklosy* is inapposite because it dealt with the preemption of common law torts under a different statutory scheme. *See Miklosy*, 44 Cal. 4th, at 899 901.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1024 PSG (SPx) | Date | November 25, 2019 |
|---|---|---|---|
| Title | Marcus Simpson v. City of Upland, et al. | | |

- The claims against City Manager Thouvenell under § 1983 for violation of due process and First Amendment retaliation (second and third causes of action);

- The claims against the City under § 1983 for violation of due process and First Amendment retaliation (second and third causes of action).

The motions for summary judgment are **DENIED** as to the following claims, which will move forward:

- The claims against Chief Johnson under § 1983 for violation of due process and First Amendment retaliation (second and third causes of action);

- The claims against the City for employment retaliation under Cal. Lab. Code § 1102.5 and employment retaliation in violation of the MMBA (first and fourth causes of action).

IV.     Conclusion

    For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part.  The Court **GRANTS** the motion for summary judgment to dismiss all causes of action against City Manager Thouvenell.  The Court also **GRANTS** the motion for summary judgment to dismiss the causes of action against the City for violations of due process and First Amendment retaliation.

    The Court **DENIES** the motion for summary judgment as to all claims against Chief Johnson.  The Court also **DENIES** the motion for summary judgment as to the state law employment retaliation claims asserted against the City.

       **IT IS SO ORDERED**.